UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BOBBIJO A. DEMOINES,

    *Plaintiff*,

v.

COMMISSIONER OF SOCIAL SECURITY,

    *Defendant*.
_____/

CASE NO. 2:17-cv-13486
DISTRICT JUDGE TERRENCE G. BERG
MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 10, 11)

**I.**    **RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (Doc. 10), be **DENIED**, that the Commissioner's Motion, (Doc. 11), be **GRANTED**, and that this case be **AFFIRMED**.

**II.**    **REPORT**

    **A.**    **Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff BobbiJo A. DeMoines's claim for Disability Insurance Benefits ("DIB").

(Doc. 3). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 10, 11).

On September 18, 2014, Plaintiff filed the instant application for DIB, alleging a disability onset date of September 7, 2012. (Doc 8 at PageID.151-157). The Commissioner denied her claim. (*Id.* at PageID.83-91). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on August 30, 2016 before ALJ Andrew G. Sloss. (*Id.* at PageID.66-81). The ALJ issued a decision on September 29, 2016, finding Plaintiff not disabled. (*Id.* at PageID.48-65). On September 26, 2017, the Appeals Council denied review, (*Id.* at PageID.25-31), and Plaintiff filed for judicial review of that final decision on October 26, 2017. (Doc. 1).

### B.     Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker*

*v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C. Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

3

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

4

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least eighteen years old and has a disability that began before age twenty-two (20 C.F.R. 404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ found Plaintiff not disabled under the Act. (Doc. 11 at PageID.48-65). At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 7, 2013, her amended alleged onset date. (*Id.* at PageID.53, 131-32). At Step Two, the ALJ concluded that the following impairments qualified as severe: bilateral lateral epicondylitis and left carpal tunnel syndrome. (*Id.*). The ALJ also decided, however, that none of these met or medically equaled a listed impairment at Step Three. (*Id.* at PageID.53-54). Thereafter, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a light work, except "she is limited to lifting nine pounds occasionally and frequently, and must avoid concentrated exposure to vibration." (*Id.* at PageID.55). At Step Four, the ALJ found Plaintiff incapable of performing her past relevant work. (*Id.* at PageID.60). But proceeding to Step Five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.* at PageID.60-61).

5

### E. Administrative Record

#### 1. Medical Evidence

The Court has reviewed Plaintiff's medical records. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2. Administrative Hearing

##### i. Function Report

Plaintiff filled out a Function Report on October 8, 2014, which appears in the administrative record. (Doc. 8 at PageID.214-221). In describing her condition, she noted that her elbow prevented her from reaching, pulling, gripping, twisting, or pinching anything. (*Id.* at PageID.214). Her daughter and husband "tr[ied] to do everyday things for us." (*Id.* at PageID.215). When sleeping, she would "toss" and "turn" while "try[ing] to find a spot for arms to feel comfortable" and stop swelling or aching. (*Id.*). She struggled to use zippers while dressing, turn knobs when bathing, and groom her hair or shave, among other things. (*Id.*). She could prepare food such as sandwiches, soup, and other "complete" meals with help from family, but she could not use a knife or open jars, and she needed breaks. (*Id.* at PageID.216). She could also do some yard work, *e.g.*, "[h]ang clothes on clothes line," "vacuum," "fold towels," "sweeping," "throwing balls," and "batting." (*Id.*). She ventured outside once or twice a week, and could drive a car. (*Id.* at PageID.217). She shopped in stores for household items, and she continued to handle her finances. (*Id.*). As hobbies and interests, she listed camping, bicycling, swimming, horse shoes, "catch ball," and "crocking glider," but she acknowledged she could not perform any activities as well

as before. (*Id.* at PageID.218). She attended church and dinner with other family members once or twice a week. (*Id.*). Abilities with which she encountered difficulty included: lifting, squatting, standing, reaching, kneeling, stair climbing, memory, completing tasks, concentration, and using her hands. (*Id.* at PageID.219). She also struggled to follow written and spoken directions. (*Id.*). She relied on braces every day since they were prescribed in 2013. (*Id.* at PageID.220).

### ii. Plaintiff's Testimony at the Administrative Hearings

Plaintiff opened her testimony by providing some detail as to her background. She noted that she graduated from high school and attained a vocational certification in phlebotomy. (Doc. 8 at PageID.69). She had a driver's license but only drove short distances due to her "elbows and my arms." (*Id.* at PageID.70). In her past work, she would have to lift anywhere from 10 to 35 pounds. (*Id.*). She then explained why she believed she could not return to work:

> I have that lateral tendonitis in my, both my elbows and I get numbness, tingliness. I have hip problems which the arthritis in that limits me to sit for a while, stand for a while, sometimes I have to lay down to release the pain. Just, every day trying to do what I can do, and I can only do a little bit at a time and then I have to break.

(*Id.* at PageID.71-72). She rated the pain in her hands at a 7 out of 10, but no surgery had been recommended. (*Id.* at PageID.72). She rated the pain in her hips at a 6 out of 10, but unlike the hand pain—which was constant—her hip pain "[c]omes and goes, . . ." (*Id.* at PageID.73). She did not seek treatment for her hip pain. (*Id.*). In a typical day, she could handle household tasks so long as she took breaks. (*Id.*). She "[s]eldom" engaged in social activities outside her house. (*Id.*). She did not watch television. (*Id.*). "I don't think I could

7

lift nine pounds. It takes both my hands just to lift a gallon of milk. It takes both my hands to turn a door knob and walking, probably not no mile." (*Id.* at PageID.74). To treat her elbow pain, she had received injections nearly 10 times. (*Id.*). On a regular basis she would drop coffee cups and other dishes. (*Id.* at PageID.75). Numbness and tingling would shoot down both of her arms if she overexerted herself. (*Id.*). Due to fatigue, she would lay down 2 or 3 times per day. (*Id.* at PageID.76). If she sat for too long, she would "have to stand up" and continue to change positions to avoid pain. (*Id.* at PageID.77).

### iii. The VE's Testimony at the Administrative Hearings

When the ALJ turned to the VE for information about Plaintiff's vocational capacity, the VE began by categorizing Plaintiff's prior work: "line worker"—unskilled, medium as per the DOT, and medium as performed; "[a]ssembler, [p]roduction [l]ine"—unskilled, light per the DOT, and light as performed; and "[a]ssembler, [s]mall [p]roduct"—unskilled, light per the DOT, and light as performed. (Doc. 8 at PageID.77-78). The ALJ then posed the first hypothetical: "If a person of the claimant's age and education and past work was limited to light work as defined by the regulations, except that she must avoid concentrated exposure to vibration, could she perform any of her past work?" (*Id.* at PageID.78). The VE noted that such an individual could perform the following work: "marker" (151,000 national jobs); "[r]outer" (168,000 national jobs); and "[c]ashier" (560,000 national jobs). (*Id.*). The ALJ then asked whether—"if that same person were further limited so that she could only lift up to nine pounds occasionally and frequently"—such an individual could continue to find work in the national economy. (*Id.*). The VE estimated a reduction in the amount of cashier positions nationally available to

50,000, and an inability to perform the router position. (*Id.* at PageID.79). However, such an individual could still perform the marker position, as well as "[t]icket [t]aker" (26,000 national jobs) and "[f]ast [f]ood [w]orker" (81,000 national jobs). (*Id.*).

### F.     Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include med ical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).  Both   "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must analyze the consistency of the claimant's statements with the other record evidence, considering her testimony about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 16-3p, 2016 WL 1119029 (Mar. 16, 2016). This analysis and the conclusions drawn therefrom—formerly termed a credibility determination[1]—can be disturbed only for a "compelling

---

[1] On March 28, 2016, SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016), superseded and replaced SSR 96-7p. *See* SSR 16-3p, 2016 WL 1237954 (Mar. 24, 2016). The Social Security Administration explained in SSR 16-3p that the ruling's main purpose was to eliminate the term "credibility," and thereby "clarify that subjective symptom evaluation is not an examination of an individual's character, . . ." 2016 WL 1119029, at *1 n.1. As some in this Circuit have observed, the ruling, read in its entirety does not appear to substantively alter much of the manner by which ALJ's evaluate claimants' statements. *See id.* at *2 ("[W]e are eliminating the use of the term 'credibility from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation."); *see also, e.g.*, *Brothers v. Berryhill*, No. 5:16-CV-01942, 2017 WL 2912535, at *10 (N.D. Ohio

11

reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; 16-3p, 2016 WL 1119029, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; 16-3p, 2016 WL 1119029, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. 16-3p, 2016 WL 1119029, at *2.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. 16-3p,

---

June 22, 2017), *R. & R. adopted sub nom. Brothers v. Comm'r of Soc. Sec.*, No. 5:16-CV1942, 2017 WL 2908875 (N.D. Ohio July 7, 2017) ("[A]ccording to the very language of SSR 16-3p, its purpose is to 'clarify' the rules concerning subjective symptom evaluation and not to substantially *change* them.").

12

2016 WL 1119029, at *5. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

>  (i)   Your daily activities;
>  (ii)  The location, duration, frequency, and intensity of . . . pain;
>  (iii) Precipitating and aggravating factors;
>  (iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
>  (v)   Treatment, other than medication, . . . received for relief of . . . pain;
>  (vi)  Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); 16-3p, 2016 WL 1119029, at *7. Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); 16-3p, 2016 WL 1119029, at *8.

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G. Analysis

Plaintiff presents one overarching argument in her brief: "despite the importance of the RFC finding and consideration of restrictions on Plaintiff's repetitive use of her arms and hands, the ALJ merely recited evidence while failing to explain why his RFC finding so starkly contrasted with that evidence." (Doc. 10 at PageID.444). In her view, the ALJ should have found an additional restriction as to Plaintiff's repetitive use of her arms and hands. (*Id.* at PageID.443). To support this argument, she lists evidence favorable to Plaintiff. She notes, for instance, that Plaintiff's medical history involved "repeated injections" to reduce pain, and use of various aids and braces to ameliorate symptoms from her bilateral elbow lateral epicondylitis and carpal tunnel syndrome. (*Id.* at PageID.445). In addition, Dr. McClimans suggested Plaintiff not lift with her elbows, and Dr. Kuiper restricted Plaintiff's ability to operate hand controls; although the ALJ granted each source some weight, Plaintiff argues that he did so without sufficiently explaining why he declined to adopt these particular limitations. (*Id.* at PageID.446-447). Dr. Babcock likewise opined that Plaintiff could engage in "'no repetitive use of the elbows,'" but the ALJ erroneously deemed this limitation "'not vocationally relevant for a disability analysis.'" (*Id.* at PageID.448 (citations omitted)). Ultimately, Plaintiff's position is that restrictions in the ALJ's RFC assessment fail to account for her inability to reach, and therefore lack the support of substantial evidence.

Although Plaintiff locates favorable evidence in the record, the ALJ's written opinion considered that evidence and found it wanting. As Plaintiff acknowledges, he summarized and discussed the findings of physical therapist Amber Mayhew, Dr.

McClimans, Dr. Kuiper, and Dr. Babcock, as well as Plaintiff's injection regimen and use of braces. (Doc. 10 at PageID.444-448); (Doc. 8 at PageID.56-60). The ALJ also noted, however, a dearth of objective evidence to support Plaintiff's alleged limitations, *e.g.*, (Doc. 8 at PageID.291, 306-308, 315), the fact that Plaintiff's limitations remained quite amenable to treatment, *e.g.*, (*Id.* at PageID.262, 286, 288), an absence of significant weakness, swelling, and instability, *e.g.*, (*Id.* at PageID.279, 288, 307, 327, 368, 409), and an ability to reach, handle, and finger, *e.g.*, (*Id.* at PageID.348). *See generally* (*Id.* at PageID.56-60). That substantial evidence may have supported Plaintiff's desired outcome does not militate against the ALJ's opinion, as the ALJ also rested his findings on substantial evidence. *Accord Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("'The substantial-evidence standard . . . presupposes that there is a zone of choice within the decisionmakers can go either way, without interference by the courts.'" (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986))); *cf.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence."). Moreover, the ALJ did not need to detail the precise reasons he omitted specific restrictions articulated by those medical sources Plaintiff cites, so long as it is clear he adequately considered the opinion. *See* SSR 06-03p, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006) (noting that the ALJ need only "explain the weight given to opinions from . . . 'other source,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the

15

case"); *see also, e.g.*, *Kondrashov v. Comm'r of Soc. Sec.*, No. 16-CV-14044, 2018 WL 1146875, at *5 (E.D. Mich. Feb. 12, 2018), *R. & R. adopted*, No. 16-14044, 2018 WL 1141802 (E.D. Mich. Mar. 2, 2018) (finding "no authority requiring an ALJ to explain each and every limitation or restriction he adopts or, conversely, does not adopt from a physician's opinion."); *Price v. Comm'r of Soc. Sec.*, No. 14-CV-13662, 2016 WL 3193025, at *2 (E.D. Mich. June 9, 2016) ("[A]n ALJ is not required to adopt all of an examining source's findings, even if the ALJ gives the opinion great weight.").

Plaintiff highlights an instance in which the ALJ discounts Dr. Babcock's finding that she could engage in "'no repetitive use of the elbows'" as "'not vocationally relevant for a disability analysis.'" (Doc. 10 at PageID.448 (quoting Doc. 8 at PageID.59)). In fact, Plaintiff suggests, "no repetitive use of the elbows" is equivalent to an inability to reach "because elbows are used to reach." (*Id.*). This argument misses the mark. The elbow joint allows for flexion and extension at the elbow as well as pronation and supination of the forearm; one engages the elbow when performing a variety of activities, including reaching, pushing, pulling, lifting, and more. Accordingly, Dr. Babcock's statement that Plaintiff could perform "no lifting or repeated use of the elbows" has an indeterminate meaning for vocational analysis.[2] Even so, the ALJ amply considered the evidence at

---

[2] Plaintiff adds that the ALJ did not seek clarification from Dr. Babcock, but does not argue in any detail that the ALJ should have recontacted any medical source of record; thus, any such argument is waived. *See, e.g.*, *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (undeveloped arguments are waived). In any case, the quandary whether to recontact a non-treating medical source typically remains subject to the ALJ's sound discretion. *See* 20 C.F.R. § 404.1520b(b)(2)(i). Thus, the ALJ had no duty to recontact Dr. Babcock, and his decision not to do so does not cast doubt upon the merits of his determination. Moreover, even assuming the regulations imposed such a duty for sources such as Dr. Babcock, *see* SSR 96-5p, 1996 WL 374183, at *6 (July 2, 1996), the ALJ was not confused as to the evidence underlying Dr. Babcock's findings, for he

16

issue—as Plaintiff recognizes—and determined that she suffered from no deficiency in her capacity to reach. He instead included a restriction that Plaintiff avoid concentrated vibration, and this determination was supported by substantial evidence. *See, e.g.*, *Kravat v. Comm'r of Soc. Sec.*, No. 16-CV-11159, 2017 WL 4098831, at *6 (E.D. Mich. Sept. 15, 2017) (protection from vibration may account for carpal tunnel syndrome's symptoms); *Schalau v. Comm'r of Soc. Sec.*, No. 12-14998, 2013 WL 6133068, at *7 (E.D. Mich. Nov. 21, 2013) (same).

For these reasons, the ALJ's conclusions are supported by substantial evidence and Plaintiff's challenge should not prevail.

### H. Conclusion

For the reasons stated above, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (Doc. 10), be **DENIED**, that the Commissioner's Motion, (Doc. 11), be **GRANTED**, and that this case be **AFFIRMED**.

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985);

---

considered such evidence. The excerpt at issue was merely deficient, and thus no duty would have attached.

*Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  July 10, 2018                                    S/ PATRICIA T. MORRIS
                                                        Patricia T. Morris
                                                        United States Magistrate Judge


**CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: July 10, 2018                                     By s/Kristen Castaneda
                                                        Case Manager